# EXHIBIT A

 CT Corporation

**Service of Process Transmittal**
09/27/2013
CT Log Number 523596665

TO:     Vanessa Williams
        R. L. Polk & Co.
        26533 Evergreen Road, Suite 900
        Southfield, MI 48076

RE:     **Process Served in Delaware**

FOR:    R. L. Polk & Co. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Buttonwood Tree Value Partners, L.P., etc., and Mitchell Partners L.P., etc., on behalf of themselves and all others similarly situated, Pltfs. vs. R. L. Polk & Co., Inc., et al., Dfts. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summonses, Verified Class Action Complaint(s), Affidavit(s), Verification(s), Information(s) |
| **COURT/AGENCY:** | Delaware - Court of Chancery, DE Case # 8939VCP |
| **NATURE OF ACTION:** | Class Action - Breaches of Fiduciary Duty - Action seeking to recover damages against all Defendants and disgorgement from the Polk Family Directors in connection with the Self-Tender |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 09/27/2013 at 12:07 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | R. Bruce McNew Wilks, Lukoff & Bracegirdle, LLC 1300 N. Grant Ave. Ste. 100 Wilmington, DE 19806 302-225-0850 |
| **REMARKS:** | Please note the process server underlined and/or highlighted the entity being served prior to receipt by CT. |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex Priority Overnight , 796807534986 Image SOP Email Notification, Lisa Lezotte lisa_lezotte@polk.com Email Notification, Kathy Heller kathy.heller@ihs.com |
| **SIGNED:** | The Corporation Trust Company |
| **PER:** | Melanie McGrath |
| **ADDRESS:** | 1209 Orange Street Wilmington, DE 19801 |
| **TELEPHONE:** | 302-658-7581 |

Page 1 of  1 / SAD

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.




## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

BUTTONWOOD TREE VALUE
PARTNERS, L.P., a California Limited
Partnership and MITCHELL PARTNERS L.P.,
a California Limited Partnership,  on behalf of
themselves and all others similarly situated

CA #: 8939-VCP

SUMMONS

v.

R. L. POLK & CO., INC., STEPHEN R.
POLK, NANCY K. POLK, KATHERINE
POLK OSBORNE, DAVID COLE, RICK
INATOME, CHARLES MCCLURE and J.
MICHAEL MOORE,

TO:     **SPECIAL PROCESS SERVER**
          **PARCELS, INC.**

**YOU ARE COMMANDED:**

To summon the above named defendant  so that, within 20 days after service hereof upon defendant, exclusive of the day of service, defendant  shall serve upon R. Bruce McNew, Esquire, Plaintiff's attorney whose address is 1300 N. Grant Avenue, Suite 100, Wilmington, DE, 19806  an answer to the complaint; and

To serve upon defendant a copy hereof and of the complaint.

**TO THE ABOVE NAMED DEFENDANTS:**

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney name above an answer to the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

Dated: September 26, 2013

_____
Register in Chancery

BUTTONWOOD TREE VALUE
PARTNERS, L.P., a California Limited
Partnership and MITCHELL PARTNERS
L.P., a California Limited Partnership, on
behalf of themselves and all others similarly
situated

CA #: 8939-VCP

v.

R. L. POLK & CO., INC., STEPHEN R.
POLK, NANCY K. POLK, KATHERINE
POLK OSBORNE, DAVID COLE, RICK
INATOME, CHARLES MCCLURE and J.
MICHAEL MOORE,

## SUMMONS

Please effectuate service upon:

> R.L. Polk & Co.
> c/o Registered Agent
> The Corporation Trust Company
> Corporation Trust Center
> 1209 Orange Street
> Wilmington, DE 19801

Service to be completed by Special Process Server-
Parcels, Inc.

Plaintiff's Attorney:  <u>R. Bruce McNew, Esquire (Bar # 967)</u>



EFiled: Sep 24 2013 02:40P
Transaction ID 54276000
Case No. 8939-

### IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

BUTTONWOOD TREE VALUE PARTNERS,  )
L.P., a California Limited Partnership and  )
MITCHELL PARTNERS L.P., a California  )
Limited Partnership, on behalf of themselves  )
and all others similarly situated  )
                         )
        Plaintiffs,             )   C.A. No.
                         )
      v.                  )   CLASS ACTION
                         )
R. L. POLK & CO., INC., STEPHEN R.  )
POLK, NANCY K. POLK, KATHERINE  )
POLK OSBORNE, DAVID COLE, RICK  )
INATOME, CHARLES MCCLURE and J.  )
MICHAEL MOORE,  )
        Defendants.

### VERIFIED CLASS ACTION COMPLAINT

Plaintiffs, by their undersigned attorneys, for their Verified Class Action Complaint against Defendants, upon personal knowledge as to themselves and upon information and belief, based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, allege as follows:

### NATURE AND SUMMARY OF THE ACTION

1.    In an Information Statement dated June 14, 2013, the 93.66% Controlling Shareholders (as defined in paragraph 13) of R. L. Polk & Co, Inc. ("Polk" or the "Company") announced that, after an extensive auction process, they had sold Polk to a third party, IHS, Inc. ("IHS") for over $1.341 billion (the "Sale"). The minority shareholders of Polk were informed that they would receive $2,675 per share as a result of a completed short form merger which immediately preceded the Sale (the "Short Form Merger"). In the Sale, the Controlling Shareholders received cash and stock, which they estimated to be worth $2,675, the per share price to be paid to minority shareholders as a result of the Short Form Merger.

2.     In May, 2011, only twenty two months before the closing of the Sale, pursuant to an Offer To Purchase dated March 31, 2011 (the "Offer To Purchase"), the Company purchased 34,825 of its 536,397 outstanding shares in a self-tender offer at a price of $810 per share; about 30% of the price received in the Sale (the "Self-Tender"). The Self-Tender valued Polk at slightly less than $435 million, 30% of what the Controlling Shareholders received when they sold their shares. In that intervening period, there had been no material change in the operations or financial results at Polk, which has been in the motor vehicle records business since 1922 and family controlled from its inception in 1870. For example, in a May 3, 2012 notice and proxy solicitation for an Annual meeting on May 24, 2012, which may in fact never have been held, the Company's total description of Polk's financial situation was: "Revenue for the current fiscal year is above prior year amounts. CARFAX [one division] continues to experience growth, but is partially offset by declines at Polk."

3.     The Offer To Purchase specifically disclaimed any intent to engage in any extraordinary transaction, including any sale of the Company. By engaging in the Self-Tender before the Sale, the Controlling Shareholders preserved their ability to consummate the Sale through a short form merger, thereby avoiding: (a) the need to give a vote to the minority shareholders in any subsequent sale, (b) the need to give prior notice to the minority shareholders of any sale of the Company and (c) the fiduciary duties present in a long form merger. By offering only $810 per share in the Self-Tender, the Controlling Shareholders benefitted themselves by at least $62.46 million as described herein.

4.     Only seventeen (17) months after the completion of the Self-Tender, in "early October 2012," the Controlling Shareholders caused the Company to hire an Investment Banker to conduct the Sale. Plaintiffs have been informed that well prior to that time, the word was out

2

that Polk was for sale. In December, 2012, two months later the Controlling Shareholders caused the Company to pay a special dividend of $240 per share (the "Special Dividend"). This dividend far exceeded the usual dividend of $5.00 per share per quarter, was almost 10 times as much as the largest prior quarterly dividend of $25 (paid *after* the Self-Tender) and was 30% of the amount paid in the Self-Tender. The Annual dividend for FYE March 2012 was a historically high $40 per share and the annual dividend FYE March 2013 was $290 per share. The Offer To Purchase did not disclose the possibility of a dividend the magnitude of the Special Dividend and in fact strongly implied the dividend would be cut in the short term. Prior to the Self-Tender, the Company had historically paid a small dividend: $22 (which included a $10 Special dividend) in FYE March 2011; $36 (which included a $20 special dividend) in FYE March 2010; and $36.50 (which included a $20 Special Dividend) in FYE ending 2009.

5.      By engaging in the Self-Tender before the Sale, and before declaring and paying the Special Dividend, the Controlling Shareholders deprived those who tendered their shares into the Self-Tender of the ability to participate in the Sale and Special Dividend. Adjusting the Sale price and Special Dividend, respectively, as if they had been paid to all the shares outstanding before the Self-Tender yields respective implied values of $2,500.71 and $224.36. Adding those amounts, subtracting the $810 paid in the Self-Tender, multiplying by the 34,825 shares acquired in the Self-Tender yields $66,692,312.75 as the amount which was not shared with those who tendered and which, instead was paid to the remaining shares, 93.66% of which were owned by the Controlling Shareholders. Thus, the Controlling Shareholders benefitted from their plan in the amount of $62,464,020.

6.      Plaintiffs bring this action as a class action seeking to recover damages against all Defendants and disgorgement from the Polk Family Directors, on behalf of themselves and all

3

other former shareholders that: (a) sold shares into the Self-Tender or (b) who tendered into the market in reliance on the Offer To Purchase, from the date of the Offer to Purchase until the close of the Self-Tender. This action seeks to recover the $66.7 million or more that they lost as a result of the breaches of fiduciary duty in connection with the Self-Tender, as more fully alleged herein and seeking disgorgement from the Controlling Shareholders the $62.5 million they obtained through their self-dealing plan. In pursuing the Self-Tender, each of the Defendants has violated applicable law by directly breaching their fiduciary duties of loyalty and due care owed to Plaintiff and the Class.

## THE PARTIES

7.     Plaintiff, Buttonwood Tree Value Partners, L.P. ("Buttonwood"), is a California limited partnership and was at all times relevant hereto a Polk shareholder and tendered 1,048 shares into the Self-Tender, which shares were purchased pursuant to the Offer To Purchase.

8.     Plaintiff, Mitchell Partners L.P. ("Mitchell"), is a California limited partnership and was, at all times relevant hereto, a Polk shareholder and sold 700 shares for $811 per share on or about May 6, 2011 before the close of the Self-Tender and in reliance upon the disclosures in the Offer To Purchase.

9.     Defendant Polk is a Delaware corporation. Although Polk has described itself as a "privately held" company, as of March 31, 2011; 51,020 of its 536,397 common shares outstanding (9.51%) were owned by public unaffiliated shareholders. The Company is headquartered in Southfield, Michigan. It was founded in Detroit in 1870 as a directory publisher by Ralph Lane Polk and has been majority owned and controlled by the Polk family since its founding. It was the oldest consumer marketing information company in America. The Company's mission is to collect and interpret data, and apply the Company's automotive

4

business expertise to help its customers make good decisions. The Company owns Carfax, Inc., the leading provider of vehicle history reports.

10.     Defendant Stephen Polk is the great-grandson of the founder of the Company. He served at all times relevant hereto as the Company's Chairman, Chief Executive Officer, and President. He has been a director of the Company since 1984. He is the brother-in-law of Nancy K. Polk and the uncle of Katherine Polk Osborne, both of whom are directors of the Company.

11.     Nancy K. Polk served at all times relevant hereto as a director of the Company and is a Polk family member. She had been on the Board since 1989.

12.     Katherine Polk Osborne served at all times relevant hereto as a director of the Company and is a Polk family member.

13.     Stephen Polk, Nancy Polk, and Katherine Polk Osborne along with the Controlling Shareholders, as defined herein, acted as the Polk family representatives on the board and dominated and controlled the Company's board of directors at all relevant times and collectively are referred to herein as the Polk Directors. The Polk Directors were at all relevant times supported by at least a majority of the other members of the Polk family who also owned shares of Polk who agreed to act as a block to exercise control over the Company. The identity of those members, the manner of their ownership, and the manner by which issues were decided and disagreements, if any, were resolved within the control block has never been disclosed. For all intents and purposes, the Polk family, as described above, has acted in concert as a single shareholder as to the matters alleged herein (the "Controlling Shareholders"). As used herein, the Polk Family refers to the members of the Polk family who, at the relevant times, were Polk shareholders and, thus, members of the controlling block and Controlling Shareholders. Because of the dearth of disclosures regarding Polk, the identity and composition of the Board at the time

5

of the Self-Tender is unknown. The Offer To Purchase mentions no director other than the Polk Directors. Similarly, the Information Statement, in connection with the Merger, mentions no director by name other than the Polk directors. The only information known to Plaintiffs about the other directors, comes from a May 3, 2012 Notice of Annual Stockholder's Meeting which included director biographies from which the allegation in paragraphs 13 through 16 below was obtained. Plaintiffs have no verification of the accuracy of that information, but in reliance on it has named those directors as defendants herein.

14.     David Cole was a director of Polk from at least 2001 until at least May 2012.

15.     Rick Inatome was a director of Polk at least from 1996 until at least May 2012.

16.     Charles McClure was a director of Polk from at least 2000 until at least May 2012.

17.     J. Michael Moore was a director of Polk from at least 1996 until at least May 2012.

18.     Defendants Cole, Inatome, McClure and Moore are collectively referred to as the Non-Polk Directors. Because of the dearth of disclosure about the Non-Polk Directors, Plaintiffs cannot know the extent to which those directors had connections with the Polk Family and or profited from the transactions herein.

19.     The Defendants named above in ¶¶ 10 through 12 and 14 through 17 are sometimes collectively referred to herein as the "Individual Defendants."

20.     The Individual Defendants, as officers and/or directors of the Company, owed fiduciary duties to its shareholders. As alleged herein, they have breached their fiduciary duties by failing to disclose material and crucial information in connection with the Self-Tender and by favoring the Polk Family, the Company's Controlling Shareholders, by engaging in an interested

6

transaction that preserved the Controlling Shareholders' ownership interest and permitted them to receive a materially higher price for their shares than those shareholders that sold in the Self-Tender or in reliance on the Offer To Purchase.

## CLASS ACTION ALLEGATIONS

21.     Plaintiffs bring this action individually and as a class action pursuant to Delaware Court of Chancery Rule 23, on behalf of all shareholders that tendered their shares in connection with the Self-Tender, or who sold their shares into the market after the dissemination of the Offer To Purchase until the close of the Tender, and who have been harmed by defendants' actions as described herein (the "Class"). Polk family members who tendered their shares are not excluded from the Class.

22.     This action is properly maintainable as a class action.

23.     The Class is so numerous that joinder of all members is impracticable. According to Polk's 2011 and 2012 Annual Reports, the Company purchased 34,825 shares in connection with the Self-Tender, likely owned by thousands of shareholders. Plaintiffs believe about 1,524 shares of Polk were sold into the market in the period subsequent to the dissemination of the Offer To Purchase and prior to the close of the Self-Tender.

24.     There are questions of law and fact which are common to the Class, including, *inter alia*, the following:

(a)     Whether the Defendants have breached their fiduciary duties of undivided loyalty, independence and due care with respect to Plaintiffs and the other members of the Class in connection with the Self-Tender;

(b)     Whether the Offer To Purchase omitted material information or misstated material information;

7

(c)     Whether the value of Polk at the time of the Self-Tender was fairly and adequately disclosed; and

(d)     Whether the Polk Family has profited as a result of the wrongs alleged herein.

25.     Plaintiffs' claims are typical of the claims of the other members of the Class and plaintiffs do not have any interest adverse to the Class.

26.     Plaintiffs are adequate representatives of the Class, have retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

27.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class, or would create adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

28.     Defendants have acted on grounds generally applicable to the Class with respect to the matter complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## FACTUAL ALLEGATIONS

### The March 2011 Self-Tender

29.     On March 31, 2011, Polk initiated the Self-Tender.  Polk sent a letter to its shareholders offering to purchase up to 37,037 shares of its outstanding common stock.  Under the terms of the Self-Tender, Polk shareholders were offered $810 in cash for each share of Polk common stock they held ("Offer Price").

30.     According to the Offer To Purchase, "[i]n March 2011," the Board retained Stout

Risius Ross, Inc. ("SRR"), a "third party" retained to assess the fairness of the Offer Price.  Less

than a month later (and possibly only days later), on March 28, 2011, SRR rendered an oral

opinion to the Board that the Offer Price was fair, from a financial point of view, to the tendering

shareholders of the Company.

31.     SRR opined that the Offer Price for the Self-Tender was fair even after

purportedly performing a merger and acquisition analysis.  According to the Offer To Purchase:

> In accordance with customary valuation practice, SRR employed generally
> accepted valuation methods in reaching its opinion, including: (1) a
> discounted cash flow analysis, pursuant to which a range of enterprise
> values was implied by discounting Polk's estimated future distributable
> cash flows at various rates of interest representing Polk's estimated cost of
> capital; (2) a guideline public company analysis, pursuant to which a range
> of pricing multiples of earnings before interest, taxes, depreciation and
> amortization ("EBITDA") was observed from the enterprise values of
> selected publicly traded companies deemed to be reasonably comparable
> to Polk and applied to Polk's historical and projected EBITDA; and (3) *a*
> *merger and acquisition analysis, pursuant to which a range of pricing*
> *multiples of EBITDA was observed from the sales prices and implied*
> *enterprise values of selected acquired companies deemed to be reasonably*
> *comparable to Polk and applied to Polk's historical and projected*
> *EBITDA.*

SRR confirmed its oral opinion with a written fairness opinion to the Board dated March 28,

2011 (the "Fairness Opinion").

32.     On the same day, based on SRR's hastily delivered Fairness Opinion, the Self-

Tender was approved by Polk's Board of Directors ("Board").

33.     At the time of the Self-Tender, the Company had 536,397 outstanding shares of

common stock.  At $810 per share, the Company valued itself at $434.5 million.

34.     The Offer To Purchase stated that:

> [m]embers of the Polk family have expressed interest in tendering shares,
> owned or controlled by them.  As a result, this share repurchase is

9

> intended to provide both the Polk family members as well as non-family members an opportunity to tender shares for purchase by the Company. We have been advised that Polk family shareholders intend to tender approximately 10,000 of the shares owned or controlled by them; however, they may tender more or fewer shares.

35.     The only stated purposes for the Self-Tender were to (1) provide liquidity to its shareholders; and (2) reduce the burdens associated with maintaining smaller shares.

36.     It is unclear how the Selling-Polk family members knew that the Company was planning a self-tender. There are only two ways this could have happened. Either: (a) the Company shared insider information with the Selling-Polk family shareholders, the plan to self-tender, violating laws and fiduciary duties; or (b) the Selling-Polk family members informed the Board, almost certainly through the Polk Directors, that they were planning to sell their shares and the Board decided to plan the Self-Tender to buy these shares rather than to have them sold into the market. It appears that the Board was concerned that if certain Polk family members sold a portion of their shares, the Polk family would no longer own over 90% of the Company.

37.     At the time of the Self-Tender, the Polk family owned or controlled 485,377 shares representing 90.5% of the total number of shares outstanding as of March 31, 2011. If the Selling-Polk family members (who were interested in selling their 10,000 shares) sold their shares to the market, the Polk family's ownership would dip to 88.6%. Therefore, in order to maintain a 90% ownership interest in the Company, the Polk family needed Polk to initiate a Self-Tender to maintain the Polk family's 90%+ control of the Company. As a result of the Self-Tender, the Polk family was able to retain over a 90% ownership interest in the Company because the Company bought 34,825 shares at a total purchase price of $28,208,200. Prior to the Offer to Purchase, shares of Polk had traded in the $600 to 650 per share range. During the

period from the date of the Offer to Purchase until the Offer closed, approximately 1,524 shares traded in the range of $810 to $860 per share, reflecting the price from the Self-Tender.

38.    Maintaining at least a 90% ownership interest in the Company would only have been imperative to the Polk family if, contrary to the statements in the Offer To Purchase, the Polk family was planning to sell the Company by means of a short-form merger at the time of the Self-Tender. This intention can be inferred by the litany of facts that are described below, not the least of which is that a family owning a billion dollar company for over 140 years does not make the decision to sell overnight. Rather, it is the result of an in-depth, deliberate, well-researched, legally reviewed business plan. The Polk family's intention to sell the Company was not disclosed in the Offer To Purchase nor was the potential value of Polk in a sale disclosed. In fact, the Offer To Purchase specifically disclaimed any such intention on the part of the Company and the Polk family:

> The Board did not consider any of the following as there were no firm offers for: (1) the merger or consolidation of the Company with or into another company or vice versa; (2) the sale or other transfer of all or any substantial part of the assets of the Company; or (3) a purchase of our securities that would enable the holder to exercise control of the Company. In addition, the Polk family has not expressed interest in exploring any such transactions.

*See* Ex. 1 at 6.

39.    In addition, the Offer To Purchase stated:

> Except as described in this document, we currently have no plans, proposals or negotiations that relate to or would result in:
>
> An extraordinary transaction, such as a merger, reorganization or liquidation, involving us or any of our subsidiaries;
>
> A purchase, sale or transfer of an amount of our assets or any of our subsidiaries' assets that would be material to us and our subsidiaries taken as a whole;
>
> A material change in our present indebtedness or capitalization;

11

A change in our present Board of Directors or management;

A material change in our corporate structure or business;

An acquisition or disposition by any person of our securities; or

A change in our articles of incorporation, by-law or other governing documents or an action that could impede the acquisition of control of the Company.

### The Sale Of Polk And The Short-Form Merger

40.    Notwithstanding the above representations that state that the Polk family had no intentions to sell the Company, the following year, Polk contacted and retained Evercore Partners ("Evercore"), an investment banking firm, to discuss possible strategic alternatives for the Company. Plaintiffs understand that Polk had quietly stated it was for sale well before retaining Evercore. This process resulted in the Sale, using a short-form merger, of Polk to IHS for $1.4 billion, more than *three times* the amount that the Company had valued itself at the time of the Self-Tender. As a result of the sale and merger, Polk shareholders who had not tendered their shares in the March 2011 Self-Tender, received $2,675 per share, more than *three times* the amount of the $810 Offer Price in the Self-Tender.

41.    There is absolutely no evidence to suggest that the value of the Company tripled in value during the time period between the March 2011 Self-Tender and the time that the Company contacted the investment banker in October of 2012 to sell the Company. Indeed, all evidence is to the contrary. The Offer To Purchase cash provided by operating activities of $22.5 million (or annualized from for the 9 months ending December 31, 2009 using a straight line method of $30 million FYE March 2010) and retained earnings of $228.9 million. FYE March 2011 disclosed cash from operating activities was 38.7 million and retained earnings were $228.6 million. FYE March 2012 cash from operations were disclosed as $40.1 million and

12

retained earnings were disclosed as $220.7 million. FYE March 2013 cash from operating activities was disclosed as $19.8 million and retained earnings at $98.88 million. Thus, while Income from operations varied, the last year before the merger it was down over 50% from the prior year and was down 33% from the year before the Self-Tender. Similarly, retained earnings were relatively flat between these 2 events until the year before the Merger when retained earnings declined approximately 55% (30% after adding back in the $57.1 million of cash used to fund the special dividends discussed herein). Upon information and belief, the Company was worth relatively the same amount at the time of the Self-Tender as it was at the time that the Company actively pursued a sale nineteen months later.

### The December 2012 Special Dividend

42.     In December, 2012, two months after Polk retained the investment banker, but before the sale was consummated, the Board without any announced reason and with full knowledge that the Company was going to sell itself, declared an extraordinarily high special dividend in the amount of $240 per share.

43.     According to the Company's 2013 Annual Report, in order to pay such a huge dividend, the Company actually had to borrow $60 million on a line of credit, liquidate $25 million of marketable securities and pay over $32 million in cash to fund the transaction.

44.     Further, in the months leading up to the Company's hiring an investment banker, the Company declared two additional extraordinary $25.00 dividends which greatly surpassed the amounts of the Company's historical regular dividends. These extraordinarily high dividends were clearly the Polk family's attempt to strip the Company of its cash not used in operations before the sale. The Board went along with the plan and issued the dividends.

45.     By eliminating a number of the Company's shareholders in the March 2011 Self-Tender, the Polk family was able to avoid paying the astronomically high $240 special dividend on 34,825 shares, saving the surviving Polk family shareholders $8.4 million dollars.  It also saved the $50 per share from the other two extraordinary dividends, a total of over $1.7 million.

46.     In connection with the Self-Tender, the Board failed to disclose to shareholders all material information regarding (i) the true motivation for the Self-Tender, i.e., the Controlling Shareholder's intention to keep a 90% ownership interest in the Company so that it could perform the short-form merger, (ii) the dividend paying potential of the Company, and (iii) the true value of the Company and its future prospects, regardless of any "present" plans and considerations of a sale or potential sale of the Company.  The Board unlawfully engaged in an interested transaction that benefited the majority of the Board (as members of the Polk family) and other Polk family members to the detriment of the tendering shareholders.  These facts demonstrate an intention to sell Polk at the time of the Self-Tender, but even if there were no such intention "present" at that time, the Board was obliged to know the value of Polk in a sale and to disclose that value in connection with the Self-Tender, particularly as that value was three times the value of the Board sponsored "fairness opinion" and Self-Tender price. By virtue of the Board's actions, at the direction of the Controlling Shareholder, the tendering shareholders and other Class members were deprived of the benefit of the Special Dividend and the Sale.

47.     Plaintiffs seek damages, including rescissory damages, for the unlawful actions taken by the Defendants at the expense of the shareholders who tendered or sold their shares in reliance          on          the          Offer          To          Purchase.

## DEFENDANTS' FIDUCIARY DUTIES

48. Under Delaware law, when directors submit to the stockholders a transaction, such as a Self-Tender, which (unlike the Self-Tender) is not an interested transaction, the directors have a duty to exercise reasonable care to disclose all facts that are material to the stockholders' consideration of the transaction or matter and that are or can reasonably be obtained through their position as directors. Facts are material if there is a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of a reasonable shareholder or, in other words, it would have significantly altered the total mix of information made available to the shareholder. If a director knows that the Company is planning a proposal at the time of a self-tender, that fact has been held to be material.

49. This duty is magnified when the transaction at issue is an interested transaction and subjects the directors to the entire fairness standard.

50. In accordance with their duties of loyalty and good faith, the defendants are obligated under Delaware law to refrain from:

(a) participating in any transaction where the directors or officers' loyalties are divided;

(b) participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the shareholders of the corporation; and/or

(c) unjustly enriching themselves at the expense or to the detriment of the shareholders.

51.     Plaintiffs allege herein that the Defendants, separately and together, in connection with the Self-Tender, knowingly and/or recklessly violated their fiduciary duties, including their duties of loyalty, good faith, and independence owed to Plaintiffs and other shareholders of Polk that tendered or sold their shares in connection with the Self-Tender. The Polk Directors stood on both sides of the transaction, engaged in self-dealing, obtained for the Polk Family, including the Polk Directors, personal benefits, including personal financial benefits, not shared equally by Plaintiffs or the Class, and chose not to provide shareholders with all the information necessary to make an informed decision in connection with the Self-Tender. As a result of Defendants' breaches of duty, neither Plaintiffs nor the Class received adequate or fair value for their Polk common stock in the Self-Tender.

52.     Because the Defendants knowingly or recklessly breached their duties of loyalty, good faith and independence in connection with the Self-Tender, the burden of providing the inherent or entire fairness of the Self-Tender, including all aspects of its disclosure, timing, purpose, structure and terms, is placed upon the defendants as a matter of law.

### FIRST CAUSE OF ACTION

#### Breach of Fiduciary Duties Against All Defendants

53.     Plaintiffs repeat and re-allege each allegation set forth herein.

54.     The Defendants have knowingly or recklessly and in bad faith violated their fiduciary duties of care, loyalty, candor, good faith, and independence owed to the shareholders of Polk and have acted to put the personal interests of the Polk Directors and the Polk Family, the Controlling Shareholders, ahead of the interests of Polk's other shareholders.

55.     By the acts, transactions and courses of conduct alleged herein, Defendants individually and acting as part of a common plan, knowingly or recklessly have unfairly

deprived Plaintiffs and other members of the Class of all material facts needed to determine how to respond to the Self-Tender, and specifically of the true value of their Polk stock.

56.     The Defendants have knowingly or recklessly violated their fiduciary duties by entering into the Self-Tender without regard to the fairness of the transaction to the Class.

57.     As demonstrated by the allegations above, the Defendants knowingly or recklessly failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to the shareholders of Polk because, among other reasons, they failed to:

a.     disclose material and crucial information in connection with the March 2011 Self-Tender, including but not limited to (i) the Company's plans and considerations to sell or potentially sell the Company in the near future; (ii) the Company's ability to pay dividends, and (iii) the true motivation for the Self-Tender, i.e., to preserve the controlling shareholder's 90% ownership interest in the Company;

b.     disclose the true value of the Company, including its value in a sale;

c.     ensure fair process and a fair price; and

d.     act in the best interests of all the shareholders of Polk common stock.

58.     By reason of the foregoing acts, practices and course of conduct, the Defendants have knowingly or recklessly failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

17

59.     As a result of the actions of Defendants, Plaintiff and the Class have been harmed in an amount subject to proof at trial.

60.     All of the actions of the Defendants related to the Self-Tender constitute an interested transaction and they are subject to the standard of entire fairness.

61.     The Self-Tender does not meet the standard of entire fairness.  It was not designed, implemented, approved or disclosed in either a fair process or at a fair price.  The effect of Defendants' actions has been to benefit the Controlling Stockholders, certain members of the Polk Family, by permitting them to maintain their 90% ownership interest in the Company and allowing them to materially benefit from the sale of the Company, while at the same time inducing the Class by material omissions, misstatements and non-disclosures from sharing in that value.  At all times relevant hereto, the Board knew or should have known of the Controlling Shareholder's plans (since the Board included Polk family members themselves), and knew or should have known the true value of the Company, and should have caused the foregoing to be disclosed. These actions resulted in damages to the Class in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in Plaintiffs' favor and in favor of the Class and against Defendants, as follows:

A.      Declaring that this action is properly maintainable as a class action;

B.      Awarding Plaintiffs and the Class damages for the Defendants' breaches of fiduciary duty in an amount to be determined at trial;

C.      Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

D.    Granting such other and further equitable relief as this Court may deem just and proper.

**WILKS, LUKOFF & BRACEGIRDLE, LLC**

_/s/ R. Bruce McNew_
Bruce McNew, Esq. (Del. ID No. 967)
Andrea S. Brooks, Esq. (Del. ID No. 5064)
1300 N. Grant Avenue, Suite 100
Wilmington, DE  19806
Telephone:  (302) 225-0850

_Attorneys for Plaintiffs_

Dated:  September 24, 2013

EFiled: Sep 24 2013 02:40PM EDT
Transaction ID 54276000
Case No. 8939-

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

BUTTONWOOD TREE VALUE PARTNERS, )
L.P., a California Limited Partnership, )
MITCHELL PARTNERS L.P., a California )
Limited Partnership, on behalf of themselves )
and all others similarly situated )
)
       Plaintiffs, )   C.A. No.
)
       v. )   <u>CLASS ACTION</u>
)
R. L. POLK & CO., INC., STEPHEN R. )
POLK, NANCY K. POLK, KATHERINE )
POLK OSBORNE, )
DAVID COLE, RICK INATOME, CHARLES )
MCCLURE, J. MICHAEL MOORE )
)
       Defendants.

## AFFIDAVIT OF JAMES MITCHELL UNDER RULE 23 (aa)

    I, James Mitchell, General Partner of Mitchell Partners, L.P., have not received, been

promised, or offered and will not accept any form of compensation, directly or indirectly, for

prosecuting or serving as a representative party in a class action in which the person or entity is

named party except for: (i) such damages or other relief as the Court may award such person as a

member of the Class, (ii) such fees, costs, or other payments as the Court expressly approves to

be paid to or on behalf of such person, or (iii) reimbursement, paid by such person's attorneys, of

actual and reasonable out-of-pocket expenditures incurred directly in connection with the

prosecution of the action.

                                     _____
                                     James Mitchell
                                     General Partner, Mitchell Partners, L.P.

State of California :
                 :
Orange County:

    SWORN TO AND SUBSCRIBED before me this 11 day of September 2013

                                 _____
                               Notary Public
                               My Commission Expires:

KATHRYN L. KIMBREL
Commission # 1920363
Notary Public - California
Orange County
My Comm. Expires Jan 3, 2015

EFiled: Sep 24 2013 02:40PM
Transaction ID 54276000
Case No. 8939-

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

BUTTONWOOD TREE VALUE PARTNERS,  )
L.P., a California Limited Partnership,  )
MITCHELL PARTNERS L.P., a California  )
Limited Partnership, on behalf of themselves  )
and all others similarly situated  )
                                                      )
                Plaintiffs,  )  C.A. No.
                                                     )
        v.  )  CLASS ACTION
                                                     )
R. L. POLK & CO., INC., STEPHEN R.  )
POLK, NANCY K. POLK, KATHERINE  )
POLK OSBORNE,  )
DAVID COLE, RICK INATOME, CHARLES  )
MCCLURE, J. MICHAEL MOORE  )
                Defendants.

## AFFIDAVIT OF JOHN H. NORBERG UNDER RULE 23(aa)

I, John H. Norberg, managing member of Buttonwood Tree Value Partners, have not received, been promised, or offered and will not accept any form of compensation, directly or indirectly, for prosecuting or serving as a representative party in a class action in which the person or entity is named party except for: (i) such damages or other relief as the Court may award such person as a member of the Class, (ii) such fees, costs, or other payments as the Court expressly approves to be paid to or on behalf of such person, or (iii) reimbursement, paid by such person's attorneys, of actual and reasonable out-of-pocket expenditures incurred directly in connection with the prosecution of the action.

                                        _John H. Norberg_

John H. Norberg
Managing Member, Buttonwood Tree Value
Partners

State of  California  :
                      :
Orange  County:

SWORN TO AND SUBSCRIBED before me this 24th day of September, 2013

TIFFANY ANN DI ELLO
COMM. # 1920438
NOTARY PUBLIC CALIFORNIA
ORANGE COUNTY
MY COMM. EXP. FEB. 1, 2018

                                    Notary Public
                                    My Commission Expires: 2/1/2015

EFiled: Sep 24 2013 02:40PM EDT
Transaction ID 54376000
Case No. 8939-

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

BUTTONWOOD TREE VALUE PARTNERS, )
L.P., a California Limited Partnership, )
MITCHELL PARTNERS L.P., a California )
Limited Partnership, on behalf of themselves )
and all others similarly situated )
                                          )
           Plaintiffs, )   C.A. No.
                                            )
     v. )   <u>CLASS ACTION</u>
                                            )
R. L. POLK & CO., INC., STEPHEN R. )
POLK, NANCY K. POLK, KATHERINE )
POLK OSBORNE, )
DAVID COLE, RICK INATOME, CHARLES )
MCCLURE, J. MICHAEL MOORE )
           Defendants.

### VERIFICATION PURSUANT TO RULE 3(aa)

I, James Mitchell, General Partner of Mitchell Partners, L.P., hereby verify that the

allegations in the foregoing Verified Class Action Complaint are true and correct to the best of

my knowledge, information, and belief.

                                   James Mitchell
                                   General Partner, Mitchell Partners, L.P.

State of California :
                     :
Orange County:

SWORN TO AND SUBSCRIBED before me this 11 day of September 2013

                                 Notary Public
                                 My Commission Expires:

KATHRYN L. KIMBREL
Commission # 1920383
Notary Public - California
Orange County
My Comm. Expires Jan 3, 2015

EFiled:  Sep 24 2013 02:40PM EDT
Transaction ID 54276000
Case No. 8939

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| BUTTONWOOD TREE VALUE PARTNERS, L.P., a California Limited Partnership, MITCHELL PARTNERS L.P., a California Limited Partnership,  on behalf of themselves and all others similarly situated | ) ) ) ) ) ) |
| Plaintiffs, | ) C.A. No. ) |
| v. | ) CLASS ACTION ) |
| R. L. POLK & CO., INC., STEPHEN R. POLK, NANCY K. POLK, KATHERINE POLK OSBORNE, DAVID COLE, RICK INATOME, CHARLES MCCLURE, J. MICHAEL MOORE | ) ) ) ) ) ) |
| Defendants. | |

### VERIFICATION PURSUANT TO RULE 3(aa)

I, John H. Norberg, Managing Member of Buttonwood Tree Value Partners, L.P., hereby verify that the allegations in the foregoing Verified Class Action Complaint are true and correct to the best of my knowledge, information, and belief.

_____
John H. Norberg
Managing Member, Buttonwood Tree Value
Partners, L.P.

State of _California_ :
                                 :
_Orange_ County:

SWORN TO AND SUBSCRIBED before me this 27th day of September , 2013

_____
Notary Public
My Commission Expires: 2/1/2015

TIFFANY ANN DILELLO
COMM. # 1920438
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Comm. Exp. Feb. 1, 2015

EFiled: Sep 24 2013 02:40PM EDT
Transaction ID 54276000
Case No. 8935-
SUPPLEMENTAL INFORMATION PURSUANT TO RULE
3(A) OF THE RULES OF THE COURT OF
CHANCERY

The information contained herein is for the use by the Court for statistical and administrative purposes only. Nothing stated herein shall be deemed an admission by or binding upon any party.

Caption of Case:       BUTTONWOOD TREE VALUE PARTNERS, L.P., a California Limited Partnership, and MITCHELL PARTNERS L.P., a California Limited Partnership, on behalf of themselves and all others similarly situated, v. R. L. POLK & CO., INC., STEPHEN R. POLK, NANCY K. POLK, KATHERINE POLK OSBORNE, DAVID COLE, RICK INATOME, CHARLES MCCLURE, and J. MICHAEL MOORE

1.   Date Filed: September 24, 2013

2.   Name and address of counsel for plaintiff(s):
        Bruce McNew, Esq. (Del. ID No. 967)
        Andrea S. Brooks, Esq. (Del. ID No. 5064)
        Wilks Lukoff Bracegirdle, LLC
        1300 N. Grant Avenue, Ste 100
        Wilmington, DE 19806
        Tel: (302) 225-0850

3.   Short statement and nature of claim asserted:
        Plaintiff seeks relief for claims that Defendants (except HFLMC) have breached their fiduciaries to Plaintiff and the Class as alleged in the Complaint and that HFLMC has aided and abetted those breaches.

4.   Substantive field of law involved (check one):
        ____ Administrative law                    ____ Trade secrets/trade mark/
        ____ Commercial law                              or other intellectual
        ____ Constitutional law                          property
        _X_ Corporation law                         ____ Trusts*
        ____ Guardianships                          ____ Wills and estates*+
        ____ Labor law                              ____ Zoning
        ____ Real Property                          ____ Other

5.   Related cases, including any Register of Wills matters (which requires copies of all documents in this matter to be filed with the Register of Wills): none

6.   Basis of court's jurisdiction (including the citation of any statute(s) conferring jurisdiction):
     Chancery Rule 23, 10 DEL. C. § 3114

7.   If the complaint seeks preliminary equitable relief, state the specific preliminary relief sought.

8.   If the complaint seeks a TRO, summary proceedings, a Preliminary Injunction, or Expedited Proceedings, check here _____`____.
     (If #9 is checked, a Motion to Expedite must accompany the transaction.)

10.  If the complaint is one that in the opinion of counsel should not be assigned to a Master in the first instance, check here and attach a statement of good cause.

                                   /s/ R. Bruce McNew
                                   R. Bruce McNew (# 967)

WILKS, LUKOFF & BRACEGIRDLE, LLC

ATTORNEYS AT LAW

1100 NORTH GRANT AVENUE, SUITE 100  ·  WILMINGTON, DELAWARE 19806

R.L. Polk & Co.
c/o Registered Agent
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

EFiled:  Sep 26 2013 11:42AM EDT
Transaction ID 54289010
Case No. 8939-VCP

# WILKS, LUKOFF & BRACEGIRDLE, LLC

## ATTORNEYS AT LAW

R. BRUCE MCl

Direct Phone:  302.225._____
Direct Fax:  302.225.0024
Email:  mcnew@wlblaw.com

September 26, 2013

<u>By E-Filing via LexisNexis</u>
Register in Chancery
New Castle County Courthouse
500 N. King Street
Wilmington, DE 19801

Re:     SUMMONS INSTRUCTIONS
*Buttonwood Tree Value Partners LP v. R.L. Polk & Co., et al.*
C.A. No 8939-VCP

Dear Register:

Plaintiff hereby appoints Parcels, Inc., a messenger service, as special process server to serve process upon Defendant R.L. Polk & Co. at its registered agent, The Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, DE, 19801.  The summons will be prepared by Wilks, Lukoff and Bracegirdle, LLC.

Pursuant to 10 Del. C. § 3114, Plaintiff hereby appoints Parcels, Inc., a messenger service, as special process server to serve process upon Individual Defendants Stephen R. Polk, Nancy K. Polk, Katherine Polk Osbourne, David Cole, Rick Inatome, Charles McClure, and J. Michael Moore c/o R.L. Polk & Co. at its registered agent, The Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, DE, 19801.  The summonses will be prepared by Wilks, Lukoff and Bracegirdle, LLC.

Respectfully,

/s/ R. Bruce McNew

R. Bruce McNew (I.D. No. 967)

RBM/aeg

EFiled:  Sep 26 2013 11:45AM EDT
Transaction ID 54289047
Case No. 8939-VCP

**1.      IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| BUTTONWOOD TREE VALUE PARTNERS, L.P., a California Limited Partnership and MITCHELL PARTNERS L.P., a California Limited Partnership,  on behalf of themselves and all others similarly situated | ) ) ) ) ) ) |
| Plaintiffs, | ) C.A. No. 8939-VCP ) |
| v. | ) CLASS ACTION ) |
| R. L. POLK & CO., INC., STEPHEN R. POLK, NANCY K. POLK, KATHERINE POLK OSBOURNE, DAVID COLE, RICK INATOME, CHARLES MCCLURE and J. MICHAEL MOORE, | ) ) ) ) ) |
| Defendants. | |

**STATEMENT PURSUANT TO CHANCERY RULE 4(dc)**

1.      R.L. Polk & Co. is the name of the corporation upon whose governing body the following non-residents serve: Stephen R. Polk, Nancy K. Polk, Katherine Polk Osbourne, David Cole, Rick Inatome, Charles McClure, and J. Michael Moore.  The business address of R.L. Polk & Co. is 26533 Evergreen Road, Suite 900 Southfield, MI 48076.

2.       The registered agent in Delaware of R.L. Polk & Co. is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street Wilmington, DE 19801.

3.      Plaintiff has inquired of the Delaware Secretary of State's office to ascertain the last known residence address for each non-resident individual defendant as set forth on the most recent annual report of R.L. Polk & Co.

4.      The Secretary of State's office was unable to provide that information and, therefore, after a diligent effort, the last known residence address of each non-resident individual defendant is unknown.

5.      Plaintiff seeks service, pursuant to 10 <u>Del</u>. <u>C</u>. §3114, upon the following non-residents:   Stephen R. Polk, Nancy K. Polk, Katherine Polk Osbourne, David Cole, Rick Inatome, Charles McClure, and J. Michael Moore.

Dated: September 26, 2013          **WILKS LUKOFF & BRACEGIRDLE LLC**


By:      <u>/s/ R. Bruce McNew</u>
         R. Bruce McNew (#967)
         1300 N. Grant Avenue, Ste 100
         Wilmington, DE  19806
         T: (302) 225-0850
         F: (302) 225-0024

         **COUNSEL FOR PLAINTIFF**

**EFiled: Sep 26 2013 02:51PM EDT**
**Transaction ID 54391222**
**Case No. 8939-VCP**

**WILKS, LUKOFF & BRACEGIRDLE, LLC**

ATTORNEYS AT LAW

R. BRUCE MCNEW
Direct Phone: 302.225.0850
Direct Fax: 302.225.0024
Email: mcnew@wlblaw.com

*[handwritten]* 9/26/13- issued (1) 3114 summons to SPS (7 copies); Issued (1) summons to SPS (1 copy)

September 26, 2013

By E-Filing via LexisNexis
Register in Chancery
New Castle County Courthouse
500 N. King Street
Wilmington, DE 19801

     *Re:*    SUMMONS INSTRUCTIONS
          *Buttonwood Tree Value Partners LP v. R.L. Polk & Co., et al.*
          C.A. No 8939-VCP

Dear Register:

     Plaintiff hereby appoints Parcels, Inc., a messenger service, as special process server to serve process upon Defendant R.L. Polk & Co. at its registered agent, The Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, DE, 19801.  The summons will be prepared by Wilks, Lukoff and Bracegirdle, LLC.

     Pursuant to 10 Del. C. § 3114, Plaintiff hereby appoints Parcels, Inc., a messenger service, as special process server to serve process upon Individual Defendants Stephen R. Polk, Nancy K. Polk, Katherine Polk Osbourne, David Cole, Rick Inatome, Charles McClure, and J. Michael Moore c/o R.L. Polk & Co. at its registered agent, The Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, DE, 19801.  The summonses will be prepared by Wilks, Lukoff and Bracegirdle, LLC.

                             Respectfully,

                             /s/ R. Bruce McNew

                             R. Bruce McNew (I.D. No. 967)

RBM/aeg



## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

BUTTONWOOD TREE VALUE
PARTNERS, L.P., a California Limited
Partnership and MITCHELL PARTNERS
L.P., a California Limited Partnership, on
behalf of themselves and all others similarly
situated
             Plaintiff(s)
                  vs.
R. L. POLK & CO., INC., STEPHEN R.
POLK, NANCY K. POLK, KATHERINE
POLK OSBORNE, DAVID COLE, RICK
INATOME, CHARLES MCCLURE and J.
MICHAEL MOORE,
             Defendant(s)

CIVIL ACTION NO. 8939-VCP

SUMMONS PURSUANT
TO 10 DEL.C. Sec. 3114

**TO THE** SPECIAL PROCESS SERVER - PARCELS INC.:

**YOU ARE COMMANDED:**

     To Summon the above named individual defendants by service pursuant to 10 DEL.C. Sec. 3114 upon R.L. Polk & Co., a Delaware corporation, by serving its registered agent The Corporation Trust Company, which is designated for service of process in Delaware, so that within the time required by law, such defendants shall serve upon R. Bruce McNew, Esquire, plaintiff's attorney whose address is Wilks Lukoff & Bracegirdle LLC, 1300 N. Grant Avenue, Ste 100, Wilmington, DE 19806 an answer to the complaint.

     To serve upon defendants a copy hereof, of the complaint, and of a statement of plaintiff filed pursuant to Chancery Court Rule 4(dc)(1).

**TO THE ABOVE NAMED DEFENDANTS:**
     In case of your failure, within the time permitted by 10 DEL.C. Sec. 3114*, to serve on plaintiff's attorney named above an answer to the complaint, judgment by default may be rendered against you for the relief demanded in the complaint.

Dated: September 26, 2013

_____
Register in Chancery

*The text of 10 DEL.C. Sec. 3114 is set out on the reverse of this Summons

Case # 8939-VCP

BUTTONWOOD TREE VALUE
PARTNERS, L.P., a California Limited
Partnership and MITCHELL
PARTNERS L.P., a California Limited
Partnership, on behalf of themselves
and all others similarly situated

Plaintiff(s)

vs.

R. L. POLK & CO., INC., STEPHEN R.
POLK, NANCY K. POLK,
KATHERINE POLK OSBORNE,
DAVID COLE, RICK INATOME,
CHARLES MCCLURE and J.
MICHAEL MOORE,

Defendant(s)

## SUMMONS

1. Stephen R. Polk
2. Nancy K. Polk
3. Katherine Polk Osbourne
4. David Cole
5. Rick Inatome
6. Charles McClure
7. J. Michael Moore

by serving

R.L. Polk & Co.
c/o Registered Agent
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

pursuant to 10 Del. C. § 3114
Service to be effectuated by Special
Process Server Parcels Inc.

§ 3114. Service of process on nonresident directors, trustees, members of the governing body or officers of Delaware corporations.

(a) Every nonresident of this State who after September 1, 1977, accepts election or appointment as a director, trustee or member of the governing body of a corporation organized under the laws of this State or who after June 30, 1978, serves in such capacity, and every resident of this State who so accepts election or appointment or serves in such capacity and thereafter removes residence from this State shall, by such acceptance or by such service, be deemed thereby to have consented to the appointment of the registered agent of such corporation (or, if there is none, the Secretary of State) as an agent upon whom service of process may be made in all civil actions or proceedings brought in this State, by or on behalf of, or against such corporation, in which such director, trustee or member is a necessary or proper party, or in any action or proceeding against such director, trustee or member for violation of a duty in such capacity, whether or not the person continues to serve as such director, trustee or member at the time suit is commenced. Such acceptance or service as such director, trustee or member shall be a signification of the consent of such director, trustee or member that any process when so served shall be of the same legal force and validity as if served upon such director, trustee or member within this State and such appointment of the registered agent (or, if there is none, the Secretary of State) shall be irrevocable.

(b) Every nonresident of this State who after January 1, 2004, accepts election or appointment as an officer of a corporation organized under the laws of this State, or who after such date serves in such capacity, and every resident of this State who so accepts election or appointment or serves in such capacity and thereafter removes residence from this State shall, by such acceptance or by such service, be deemed thereby to have consented to the appointment of the registered agent of such corporation (or, if there is none, the Secretary of State) as an agent upon whom service of process may be made in all civil actions or proceedings brought in this State, by or on behalf of, or against such corporation, in which such officer is a necessary or proper party, or in any action or proceeding against such officer for violation of a duty in such capacity, whether or not the person continues to serve as such officer at the time suit is commenced. Such acceptance or service as such officer shall be a signification of the consent of such officer that any process when so served shall be of the same legal force and validity as if served upon such officer within this State and such appointment of the registered agent (or, if there is none, the Secretary of State) shall be irrevocable. As used in this section, the word "officer" means an officer of the corporation who (i) is or was the president, chief executive officer, chief operating officer, chief financial officer, chief legal officer, controller, treasurer or chief accounting officer of the corporation at any time during the course of conduct alleged in the action or proceeding to be wrongful, (ii) is or was identified in the corporation's public filings with the United States Securities and Exchange Commission because such person is or was 1 of the most highly compensated executive officers of the corporation at any time during the course of conduct alleged in the action or proceeding to be wrongful, or (iii) has, by written agreement with the corporation, consented to be identified as an officer for purposes of this section.

(c) Service of process shall be effected by serving the registered agent (or, if there is none, the Secretary of State) with 1 copy of such process in the manner provided by law for service of writs of summons. In addition, the Prothonotary or the Register in Chancery of the court in which the civil action or proceeding is pending shall, within 7 days of such service, deposit in the United States mails, by registered mail, postage prepaid, true and attested copies of the process, together with a statement that service is being made pursuant to this section, addressed to such director, trustee, member or officer (i) at the corporation's principal place of business and (ii) at the residence address as the same appears on the records of the Secretary of State, or, if no such residence address appears, at the address last known to the party desiring to make such service; provided, however, that if any such director's, trustee's, member's or officer's address as described in clause (ii) of this subsection (c) shall be the same as the address described in clause (i) of this subsection, then the Prothonotary or Register in Chancery shall be required to make only 1 such mailing to such director, trustee, member or officer, at the address described in clause (i) of this subsection.

(d) In any action in which any such director, trustee, member or officer has been served with process as hereinabove provided, the time in which a defendant shall be required to appear and file a responsive pleading shall be computed from the date of mailing by the Prothonotary or the Register in Chancery as provided in subsection (c) of this section; however, the court in which such action has been commenced may order such continuance or continuances as may be necessary to afford such director, trustee, member or officer reasonable opportunity to defend the action.

(e) Nothing herein contained limits or affects the right to serve process in any other manner now or hereafter provided by law. This section is an extension of and not a limitation upon the right otherwise existing of service of legal process upon nonresidents.

(f) The Court of Chancery and the Superior Court may make all necessary rules respecting the form of process, the manner of issuance and return thereof and such

other rules which may be necessary to implement this section
and are not inconsistent with this section.



## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

BUTTONWOOD TREE VALUE
PARTNERS, L.P., a California Limited
Partnership and MITCHELL PARTNERS L.P.,
a California Limited Partnership, on behalf of
themselves and all others similarly situated

CA #: 8939-VCP

SUMMONS

v.

R. L. POLK & CO., INC., STEPHEN R.
POLK, NANCY K. POLK, KATHERINE
POLK OSBORNE, DAVID COLE, RICK
INATOME, CHARLES MCCLURE and J.
MICHAEL MOORE,

TO:   **SPECIAL PROCESS SERVER**
        **PARCELS, INC.**

**YOU ARE COMMANDED:**

To summon the above named defendant so that, within 20 days after service hereof upon
defendant, exclusive of the day of service, defendant shall serve upon R. Bruce McNew,
Esquire, Plaintiff's attorney whose address is 1300 N. Grant Avenue, Suite 100, Wilmington,
DE, 19806 an answer to the complaint; and

To serve upon defendant a copy hereof and of the complaint.

**TO THE ABOVE NAMED DEFENDANTS:**

In case of your failure, within 20 days after service hereof upon you, exclusive of the day
of service, to serve on plaintiff's attorney name above an answer to the complaint, judgment by
default will be rendered against you for the relief demanded in the complaint.

Dated: September 26, 2013

_____
Register in Chancery

BUTTONWOOD TREE VALUE
PARTNERS, L.P., a California Limited
Partnership and MITCHELL PARTNERS
L.P., a California Limited Partnership,  on
behalf of themselves and all others similarly
situated

                    CA #: 8939-VCP

v.

R. L. POLK & CO., INC., STEPHEN R.
POLK, NANCY K. POLK, KATHERINE
POLK OSBORNE, DAVID COLE, RICK
INATOME, CHARLES MCCLURE and J.
MICHAEL MOORE,

## SUMMONS

Please effectuate service upon:

        R.L. Polk & Co.
        c/o Registered Agent
        The Corporation Trust Company
        Corporation Trust Center
        1209 Orange Street
        Wilmington, DE 19801

Service to be completed by Special Process Server-
Parcels, Inc.

Plaintiff's Attorney:  <u>R. Bruce McNew, Esquire (Bar # 967)</u>



**EFiled: Oct 02 2013 10:03AM EDT**
**Transaction ID 54308988**
**Case No. 8939-VCP**

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

BUTTONWOOD TREE VALUE
PARTNERS, L.P., a California Limited
Partnership and MITCHELL PARTNERS
L.P., a California Limited Partnership,  on
behalf of themselves and all others similarly
situated
           Plaintiff(s)
              vs.
R. L. POLK & CO., INC., STEPHEN R.
POLK, NANCY K. POLK, KATHERINE
POLK OSBORNE, DAVID COLE, RICK
INATOME, CHARLES MCCLURE and J.
MICHAEL MOORE,
           Defendant(s)

CIVIL ACTION NO. 8939-VCP

SUMMONS PURSUANT
TO 10 <u>Del.C.</u> Sec. 3114

**TO THE**  SPECIAL PROCESS SERVER - PARCELS INC.:

**YOU ARE COMMANDED:**

      To Summon the above named individual defendants by service pursuant to 10 <u>Del.C.</u> Sec. 3114 upon <u>R.L. Polk & Co.</u>, a Delaware corporation, by serving its registered agent <u>The Corporation Trust Company</u>, which is designated for service of process in Delaware, so that within the time required by law, such defendants shall serve upon <u>R. Bruce McNew, Esquire</u>, plaintiff's attorney whose address is <u>Wilks Lukoff & Bracegirdle LLC, 1300 N. Grant Avenue, Ste 100, Wilmington, DE 19806</u> an answer to the complaint.

      To serve upon defendants a copy hereof, of the complaint, and of a statement of plaintiff filed pursuant to Chancery Court Rule 4(dc)(1).

**TO THE ABOVE NAMED DEFENDANTS:**
      In case of your failure, within the time permitted by 10 <u>Del.C.</u> Sec. 3114*, to serve on plaintiff's attorney named above an answer to the complaint, judgment by default may be rendered against you for the relief demanded in the complaint.

Dated: <u>September 26, 2013</u>

_____
Register in Chancery

*The text of 10 <u>Del.C.</u> Sec. 3114 is set out on the reverse of this Summons

Case # 8939-VCP

BUTTONWOOD TREE VALUE
PARTNERS, L.P., a California Limited
Partnership and MITCHELL
PARTNERS L.P., a California Limited
Partnership,  on behalf of themselves
and all others similarly situated

Plaintiff(s)

vs.

R. L. POLK & CO., INC., STEPHEN R.
POLK, NANCY K. POLK,
KATHERINE POLK OSBORNE,
DAVID COLE, RICK INATOME,
CHARLES MCCLURE and J.
MICHAEL MOORE,

Defendant(s)

## SUMMONS

1. Stephen R. Polk
2. Nancy K. Polk
3. Katherine Polk Osbourne
4. David Cole
5. Rick Inatome
6. Charles McClure
7. J. Michael Moore

by serving

R.L. Polk & Co.
c/o Registered Agent
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

pursuant to 10 Del. C. § 3114
Service to be effectuated by Special
Process Server Parcels Inc.

§ 3114. Service of process on nonresident directors, trustees, members of the governing body or officers of Delaware corporations.

(a) Every nonresident of this State who after September 1, 1977, accepts election or appointment as a director, trustee or member of the governing body of a corporation organized under the laws of this State or who after June 30, 1978, serves in such capacity, and every resident of this State who so accepts election or appointment or serves in such capacity and thereafter removes residence from this State shall, by such acceptance or by such service, be deemed thereby to have consented to the appointment of the registered agent of such corporation (or, if there is none, the Secretary of State) as an agent upon whom service of process may be made in all civil actions or proceedings brought in this State, by or on behalf of, or against such corporation, in which such director, trustee or member is a necessary or proper party, or in any action or proceeding against such director, trustee or member for violation of a duty in such capacity, whether or not the person continues to serve as such director, trustee or member at the time suit is commenced. Such acceptance or service as such director, trustee or member shall be a signification of the consent of such director, trustee or member that any process when so served shall be of the same legal force and validity as if served upon such director, trustee or member within this State and such appointment of the registered agent (or, if there is none, the Secretary of State) shall be irrevocable.

(b) Every nonresident of this State who after January 1, 2004, accepts election or appointment as an officer of a corporation organized under the laws of this State, or who after such date serves in such capacity, and every resident of this State who so accepts election or appointment or serves in such capacity and thereafter removes residence from this State shall, by such acceptance or by such service, be deemed thereby to have consented to the appointment of the registered agent of such corporation (or, if there is none, the Secretary of State) as an agent upon whom service of process may be made in all civil actions or proceedings brought in this State, by or on behalf of, or against such corporation, in which such officer is a necessary or proper party, or in any action or proceeding against such officer for violation of a duty in such capacity, whether or not the person continues to serve as such officer at the time suit is commenced. Such acceptance or service as such officer shall be a signification of the consent of such officer that any process when so served shall be of the same legal force and validity as if served upon such officer within this State and such appointment of the registered agent (or, if there is none, the Secretary of State) shall be irrevocable. As used in this section, the word "officer" means an officer of the corporation who (i) is or was the president, chief executive officer, chief operating officer, chief financial officer, chief legal officer, controller, treasurer or chief accounting officer of the corporation at any time during the course of conduct alleged in the action or proceeding to be wrongful, (ii) is or was identified in the corporation's public filings with the United States Securities and Exchange Commission because such person is or was 1 of the most highly compensated executive officers of the corporation at any time during the course of conduct alleged in the action or proceeding to be wrongful, or (iii) has, by written agreement with the corporation, consented to be identified as an officer for purposes of this section.

(c) Service of process shall be effected by serving the registered agent (or, if there is none, the Secretary of State) with 1 copy of such process in the manner provided by law for service of writs of summons. In addition, the Prothonotary or the Register in Chancery of the court in which the civil action or proceeding is pending shall, within 7 days of such service, deposit in the United States mails, by registered mail, postage prepaid, true and attested copies of the process, together with a statement that service is being made pursuant to this section, addressed to such director, trustee, member or officer (i) at the corporation's principal place of business and (ii) at the residence address as the same appears on the records of the Secretary of State, or, if no such residence address appears, at the address last known to the party desiring to make such service; provided, however, that if any such director's, trustee's, member's or officer's address as described in clause (ii) of this subsection (c) shall be the same as the address described in clause (i) of this subsection, then the Prothonotary or Register in Chancery shall be required to make only 1 such mailing to such director, trustee, member or officer, at the address described in clause (i) of this subsection.

(d) In any action in which any such director, trustee, member or officer has been served with process as hereinabove provided, the time in which a defendant shall be required to appear and file a responsive pleading shall be computed from the date of mailing by the Prothonotary or the Register in Chancery as provided in subsection (c) of this section; however, the court in which such action has been commenced may order such continuance or continuances as may be necessary to afford such director, trustee, member or officer reasonable opportunity to defend the action.

(e) Nothing herein contained limits or affects the right to serve process in any other manner now or hereafter provided by law. This section is an extension of and not a limitation upon the right otherwise existing of service of legal process upon nonresidents.

(f) The Court of Chancery and the Superior Court may make all necessary rules respecting the form of process, the manner of issuance and return thereof and such

other rules which may be necessary to implement this section
and are not inconsistent with this section.

AFFIDAVIT OF SERVICE

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

BUTTONWOOD TREE VALUE
PARTNERS, L.P., a California Limited
Partnership and MITCHELL PARTNERS L.P.,
A California Limited Partnership, on behalf of
Themselves and all others similarly situated,

Plaintiffs,

V

CA #. 8939-VCP

R.L. POLK & CO., INC., STEPHEN R.
POLK, NANCY K. POLK, KATHERINE
POLK OSBORNE, DAVID COLE, RICK
INATOME, CHARLES MCCLURE and J.
MICHAEL MOORE,

Defendants,

| STATE OF DELAWARE | } | |
| | }ss. | |
| COUNTY OF NEW CASTLE | } | |

I, Jeffrey Smith, of Parcels Inc., the State of Delaware, County of New Castle, being duly sworn, say that on the 27th day of September, 2013, at 12:07 p.m., I personally served a copy of a SUMMONS AND COMPLAINT on:

1) **STEPHEN R. POLK**  6) **CHARLES MCCLURE**
2) **NANCY K. POLK**  7) **J. MICHAEL MOORE**
3) **KATHERINE POLK OSBOURNE**
4) **DAVID COLE**
5) **RICK INATOME**

by serving the registered agent for R.L. POLK & CO., The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

Name of individual accepting: Melanie McGrath-Section Head
Description of individual: White female, 35 years old, 5'4", 130lbs, red hair.

Subscribed and sworn before me
This 30th day of September, 2013

_____
Notary Public

My commission expires: _____

CASEY M. SHEA
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires April 25, 2016

**EFiled: Oct 01 2013 10:03AM EDT**
**Transaction ID 54308988**
**Case No. 8939-VCP**

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

BUTTONWOOD TREE VALUE
PARTNERS, L.P., a California Limited
Partnership and MITCHELL PARTNERS L.P.,
a California Limited Partnership, on behalf of
themselves and all others similarly situated

CA #: 8939-VCP

SUMMONS

v.

R. L. POLK & CO., INC., STEPHEN R.
POLK, NANCY K. POLK, KATHERINE
POLK OSBORNE, DAVID COLE, RICK
INATOME, CHARLES MCCLURE and J.
MICHAEL MOORE,

TO:   **SPECIAL PROCESS SERVER**
        **PARCELS, INC.**

**YOU ARE COMMANDED:**

To summon the above named defendant so that, within 20 days after service hereof upon defendant, exclusive of the day of service, defendant shall serve upon R. Bruce McNew, Esquire, Plaintiff's attorney whose address is 1300 N. Grant Avenue, Suite 100, Wilmington, DE, 19806 an answer to the complaint; and

To serve upon defendant a copy hereof and of the complaint.

**TO THE ABOVE NAMED DEFENDANTS:**

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney name above an answer to the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

Dated: September 26, 2013

_____
Register in Chancery

BUTTONWOOD TREE VALUE
PARTNERS, L.P., a California Limited
Partnership and MITCHELL PARTNERS
L.P., a California Limited Partnership,  on
behalf of themselves and all others similarly
situated

CA #: 8939-VCP

v.

R. L. POLK & CO., INC., STEPHEN R.
POLK, NANCY K. POLK, KATHERINE
POLK OSBORNE, DAVID COLE, RICK
INATOME, CHARLES MCCLURE and J.
MICHAEL MOORE,

## SUMMONS

Please effectuate service upon:

> R.L. Polk & Co.
> c/o Registered Agent
> The Corporation Trust Company
> Corporation Trust Center
> 1209 Orange Street
> Wilmington, DE 19801

Service to be completed by Special Process Server-
Parcels, Inc.

Plaintiff's Attorney: <u>R. Bruce McNew, Esquire (Bar # 967)</u>

AFFIDAVIT OF SERVICE

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

BUTTONWOOD TREE VALUE
PARTNERS, L.P., a California Limited
Partnership and MITCHELL PARTNERS L.P.,
A California Limited Partnership, on behalf of
Themselves and all others similarly situated,

        Plaintiffs,

                                          CA #. 8939-VCP

        v.

R.L. POLK & CO., INC., STEPHEN R.
POLK, NANCY K. POLK, KATHERINE
POLK OSBORNE, DAVID COLE, RICK
INATOME, CHARLES MCCLURE and J.
MICHAEL MOORE,

        Defendants,

| | |
|---|---|
| STATE OF DELAWARE | } |
| | }ss. |
| COUNTY OF NEW CASTLE | } |

I, Jeffrey Smith, of Parcels Inc., the State of Delaware, County of New Castle, being duly sworn, say that on the 27th day of September, 2013, at 12:07 p.m., I personally served a copy of a SUMMONS AND COMPLAINT on **R.L. POLK & CO., INC.,** by serving the registered agent, The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

Name of individual accepting: Melanie McGrath-Section Head
Description of individual: White female, 35 years old, 5'4", 130lbs, red hair.

_____

Subscribed and sworn before me
This 30th day of September, 2013

_____
Notary Public

My commission expires:

CATHY M. SHEA
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires April 25, 2015